In re Christopher M. WHELAN, Debtor.

Christopher M. WHELAN, Plaintiff,

v.

UNITED STATES of America, on Behalf of the Department of the Treasury, Internal Revenue Service, and the State of Louisiana, Defendants.

Bankruptcy No. 95–50756.
Adversary No. 96–5029.

United States Bankruptcy Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

May 28, 1997.

John H. Weinstein, Opelousas, LA, for Christopher Whelan.

Neal Fowler, Washington, DC, for U.S.

## REASONS FOR DECISION

GERALD H. SCHIFF, Bankruptcy Judge.

### I. FACTS

On June 27, 1995, Christopher M. Whelan ("Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, and on that day an order for relief was duly entered. An order of discharge was entered on October 3, 1995, and ultimately a final decree was entered and the case was closed.

The case was subsequently reopened on the Debtor's motion for the purpose of filing a REQUEST FOR TAX DETERMINATION UNDER 505(a) ("505(a) Motion"). The 505(a) Motion sought a determination of this court with respect to the Debtor's prepetition tax liability to the United States of America, through the Internal Revenue Service ("IRS"), and the State of Louisiana, through the Department of Revenue and Taxation ("DRT").

Two notices with respect to a hearing on the 505(a) Motion appear in the record of this proceeding. The first notice ("Notice") was dated and filed March 28, 1996, and provided notice of a hearing fixed for April 23, 1996. The second notice ("Amended Notice") was dated and filed April 15, 1996, and provided notice of a hearing fixed for May 14, 1996. The certificates of service of Debtor's counsel affixed to both the Notice and the Amended Notice appear on their face to satisfy the service requirements of the Local Rules of Bankruptcy Procedure and the FRBP, *with the exception* that neither the Notice nor the Amended Notice reflect service upon the Attorney General of the United States.

On May 14, 1996, the 505(a) Motion came up for hearing, although neither the IRS nor the DRT were represented or otherwise appeared at the hearing. The transcript of the hearing reflects the court's concern with the failure of both respondents to either answer or otherwise appear in response to the 505(a) Motion. Nonetheless, the court held that proper notice of the hearing was given and proceeded to conduct the hearing. After hearing the evidence, the court announced its findings and directed counsel for the Debtor to prepare a proposed order. An order ("Order") was subsequently entered on May 31, 1996, and all delays for appeal have now expired.

The Debtor subsequently filed a complaint ("Section 523(a)(1) Complaint") against both the IRS and the LaDRT seeking a determination of the dischargeability of certain tax debts of the Debtor. In response to the Section 523(a)(1) Complaint, the IRS filed a MOTION TO VACATE ORDER BY THE UNITED STATES ("Rule 60(b) Motion") filed pursuant to the provisions of Rule 60(b) of the Federal Rules of Civil Procedure ("FRCP"), applicable in bankruptcy cases by virtue of Rule 9024, Federal Rules of Bankruptcy Procedure ("FRBP").

A hearing on the Rule 60(b) Motion was held on April 29, 1997. After hearing from counsel for the Debtor and counsel for the IRS, the matter was taken under advisement.

A trial of the Section 523(a)(1) Complaint was held on May 9, 1997. After hearing the evidence, that matter was likewise taken under advisement.

### II. JURISDICTION

The court has jurisdiction over this proceeding pursuant to the provisions of 28 U.S.C. § 1334. The case has been referred to this court by the Standing Order of Reference in this district, set forth as Rule 22.01 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

These Reasons for Decision constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052, FRBP.

### III. LAW AND ANALYSIS

#### A. RULE 60(b) MOTION.

Rule 60(b)(4), FRCP, provides as follows:

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such

terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgement is void; ....

The IRS argues that the Order is void because the Attorney General was not served with the 505(a) Motion, resulting in the court not having jurisdiction to enter the Order. The Debtor, on the other hand, argues that service of the 505(a) Motion was properly confected in that service on the Attorney General was not an absolute requirement.

■ Proceedings subsequent to the filing of a petition for relief are generally either "contested matters" as defined by Rule 9014, FRBP, or "adversary proceedings" pursuant to Rule 7001, FRBP. Only those proceedings set forth in Rule 7001 are adversary proceedings, and, consequently, a motion brought pursuant to the provisions of section 505(a) is a contested matter.

Rule 9014, FRBP, provides in part that:

In a *contested matter* in a case under the Code not otherwise governed by these rules, relief shall be requested by *motion*, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court orders an answer to a motion. *The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004* .... (Emphasis added.)

Rule 7004(b) (4), FRBP provides:

**(b) Service by First Class Mail.** Except as provided in subdivision (h), in addition to the methods of service authorized by Rule 4(e)-(j) F.R. Civ. P., service may be made within the United States by first class mail postage prepaid as follows:

\*   \*   \*   \*   \*   \*

(4) Upon the United States, by mailing a copy of the summons and complaint addressed to the civil process clerk at the office of the United States attorney for the district in which the action is brought *and by mailing a copy of the summons and complaint to the Attorney General of the United States at*
*Washington, District of Columbia, and* in any action attacking the validity of an order of an officer or an agency of the United States not made a party, by also mailing a copy of the summons and complaint to that officer or agency. The court *shall* allow a reasonable time for service pursuant to this subdivision for the purpose of curing the failure to mail a copy of the summons and complaint to multiple officers, agencies, or corporations of the United States *if* the plaintiff has mailed a copy of the summons and complaint either to the civil process clerk at the office of the United States attorney or to the Attorney General of the United States. (Emphasis added.)

As the transcript of the May 14, 1996 hearing indicates, the court permitted the matter to proceed even though the Attorney General clearly was not served within the meaning of Rule 7004(b). The court did not consider at that time that service on the Attorney General was an absolute requirement. *See, e.g., In re Morrell,* 69 B.R. 147 (N.D.Cal.1986).

■ Counsel for the Debtor argues, however, that the second sentence of Rule 7004(b)(4) permits service upon either the Attorney General or the United States attorney for the district where the action is filed. This interpretation clearly misreads Rule 7004(b)(4). The first sentence of Rule 7004(b)(4) requires service upon both the United States attorney and the Attorney General *and* where the validity of an order of an agency order is attacked, also upon such agency. If service is required on the agency, the second sentence of Rule 7004(b)(4) requires the court to provide a reasonable time for such service *provided* service originally was made on *either* the United States attorney or the Attorney General. Counsel misreads this latter provision as a validation of the original service if either the United States attorney or the Attorney General was originally served. This interpretation of Rule 7004(b)(4) is clearly incorrect.

The IRS has no capacity to either sue or be sued; the United States is the real party in interest in cases such as this. *In re Morrell,* 69 B.R. at p. 149. However, in the

event the 505(a) Motion is deemed to be against an agency of the United States, *i.e.*, the IRS, rather than against the United States through the IRS, service is dictated by Rule 7004(b)(5):

> (5) Upon any officer or *agency* of the United States, by mailing a copy of the summons and complaint to the United States as prescribed in paragraph (4) of this subdivision *and also* to the officer or agency. If the agency is a corporation, the mailing shall be as prescribed in paragraph (3) of this subdivision of this rule. The court shall allow a reasonable time for service pursuant to this subdivision for the purpose of curing the failure to mail a copy of the summons and complaint to multiple officers, agencies, or corporations of the United States if the plaintiff has mailed a copy of the summons and complaint either to the civil process clerk at the office of the United States attorney or to the Attorney General of the United States. If the United States trustee is a trustee in the case and service is made upon the United States trustee solely as trustee, service may be made as prescribed in paragraph (10) of this subdivision of this rule.

Rule 7004(b)(5) differs only slightly from Rule 7004(b)(4) in that where the agency is definitely a party, service *must* be made on the agency in addition to the United States attorney and the Attorney General. As with Rule 7004(b)(4), the last sentence of Rule 7004(b)(5) does not provide an alternate choice of service, but creates a vehicle for providing a reasonable time to cure the defect of service if certain minimum service requirements were originally satisfied. It matters not.

Under either Rule 7004(b)(4) or (5), the result is the same. The 505(a) Motion was not served upon the Attorney General of the United States. Such service is an absolute requirement for obtaining a valid judgment against the United States or one of its agencies. In accordance with the jurisprudence cited in the IRS memorandum, the Order *is* void. Consequently, relief under Rule 60(b)(4) is dictated.

## B. SECTION 523(a)(1) COMPLAINT

As relevant to this case, section 523(a)(1) provides:

> (a) A discharge under section 7:27 ... of this title does not discharge an individual debtor from any debt—
>
> (1) for a tax or a customs duty
>
> \* \* \* \* \* \*
>
> (B) with respect to which a return, if required-
>
> (i) was not filed; or
>
> (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition;....

The dispute centers on the Debtor's tax liabilities to the LaDRT for 1989 and the IRS for 1986, 1987, and 1988.

### 1. LaDRT.

As a result of the Order entered in connection with the 505(a) Motion, the court held—

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the tax liability of the Debtor for the tax years 1985 through 1990 due the State of Louisiana is approximately $1,600.00, returns being filed for each year.

■ The Order was not appealed and is final. Nor has the LaDRT filed a motion seeking relief under Rule 60(b), FRCP, as was done by the IRS. Consequently, the prior determination of the court is *res judicata* with respect to the issue of filing, and the Debtor's tax obligation to the LaDRT for tax year 1989 is not subject to exception from discharge pursuant to section § 23(a)(1)(B)(i).

### 2. IRS.

■ Mr. Whelan testified he personally mailed the 1986 and 1987 returns to the IRS. Mr. Whelan stated that he mailed the 1986 and 1987 returns in early 1992. However, Mr. Whelan testified that he could not find copies of the 1986 and 1987 returns.

According to Mr. Whelan, his CPA told him that he, the CPA, mailed the 1988, 1989

and 1990 returns to the IRS. He testified further that these were filed at the same time, sometimes during 1992. His copy of these returns, supplied by the CPA, were in one binder.

The court, unfortunately, did not hear from the CPA, as he was not called as a witness. While Mr. Whelan's testimony with respect to such mailing was rank hearsay, no objection to such testimony was made and it is in the record. While the court might be reluctant to decide a case solely upon this "testimony", there is sound evidence in the record which corroborates this fact.

IRS Exhibit 1(b) was identified by the IRS witness, Gene Nepveaux, as a "Certificate of Assessments and Payments" relating to the Debtor's taxes for calendar years 1986 through 1989. IRS Exhibit 2 was identified as "Tax Modules", and relate to the Debtor's returns for calendar years 1989 and 1990. These documents reveal that returns for 1989 and 1990 were filed on the same day, January 24, 1992. This is certainly corroborative of the Debtor's testimony that his CPA mailed the returns. And if the IRS received the 1989 and 1990 returns on the same day, where is the 1988 return if it was included in the same package?

The Debtor also testified regarding telephone conferences he had in April 1996 with three separate employees of the IRS regarding the disputed returns for years 1988 through 1990. He had in his possession contemporaneous notes which he made of those conversations wherein the employees acknowledged receipt of the returns for those three years.

The cumulative effect of such evidence supports a finding that the Debtor's 1988 return was *delivered* to the IRS on or about January 24, 1992——why the records of the IRS do not show that the return was *filed* is their burden, not the Debtor's. Therefore, under either section 523(a)(1)(B)(i) or (ii), the tax debt to the IRS for 1988 is discharged.

■ On the other hand, however, the court finds that the debts due the IRS for calendar years 1986 and 1987 are not discharged as there is insufficient proof that such returns were in fact filed.

IRS Exhibit 1(b) indicates that assessments were made for 1986 and 1987 based upon substitutes for returns, as returns were not filed. Certificates of Assessments and Payments or Forms 4340 are legally sufficient to establish that an assessment has been made. *United States v. McCallum,* 970 F.2d 66 (5th Cir.1992). Certificates of Assessments and Payments are sufficient to establish a prima facie case that the taxpayer owes the taxes shown on the Certificate. *Geiselman v. United States,* 961 F.2d 1 (1st Cir.1992).

As to the 1986 and 1987 tax years, Mr. Whelan produced no evidence other than his own testimony that he recalled mailing the tax returns. The common law "mailbox rule" provides generally that *proper* and *timely* mailing of a document raises a rebuttable presumption that it is received by the addressee. *See, e.g., Wood v. Commissioner,* 909 F.2d 1155 (8th Cir.1990), and *Anderson v. United States,* 966 F.2d 487 (9th Cir.1992). This rule has been codified in the Internal Revenue Code, 26 U.S.C. § 7502, and has been uniformly applied in bankruptcy proceedings. *See, e.g., United States v. D'Avanza,* 132 B.R. 462 (M.D.Fla.1991), and *In re Clark,* 138 B.R. 579 (Bkrtcy.E.D.Ark.1991).

While Mr. Whelan had copies of his 1988, 1989 and 1990 tax returns, he did not have copies of the 1986 and 1987 returns, nor did he produce sufficient evidence to show proper and timely mailing. Consequently, the court finds that Mr. Whelan has produced insufficient evidence to rebut the presumption created by the Certificates of Assessments and Payments that assessments were made based upon substitutes for returns.

For these reasons, therefore, Mr. Whelan's tax debts to the IRS for calendar years 1986 and 1987 are not dischargeable pursuant to the provisions of section 523(a)(1)(B)(i).

Counsel for IRS is to prepare a proposed order in conformity with the foregoing reasons and shall forward such proposed order to the Clerk of the Bankruptcy Court for processing.

**THUS DONE AND SIGNED.**